We have a two issues in this case are the untimeliness of the filing of the IPR beyond the one-year statutory bar, and whether or not the decision on claim construction in the IPR was valid and or was it correct. The first issue is whether, I thought your first issue was whether rule four of the federal rules applies to the PCAB. Is that part of your first issue? Well, the rule four, you know, service by waiver. In this instance, we serve federal civil procedure for 4D, correct. We serve. Does it apply to the PTAB? It has to. It's a rule for the PTAB relies upon whether or not the district court service was effective. It's not a service at the PTAB, it's a service in the district court. So the PTAB has to honor rule four. We served in two manners under 4D waiver of service, and we also served under the Hague Convention, the defendant in England. Under the waiver argument, the rule four is pretty clear that you have to file a waiver for the court. And the advisory committee note makes clear that the purpose of that is to fix the time period for the running of the statute of limitations similar to the kind of issues that we have here. And so for purposes of statute of limitations, rule 4D is saying it's not served until the waiver is filed with the court, right? Yes, Your Honor, but we're not relying just on rule 4D. We're relying upon the service that was effected. So you're giving up on the 4D argument? No, we believe they were effectively served under 4D. Let's stick with that for a moment. I just described to you what 4D says, and the waiver was not filed with the court in such a way that the one-year period was, right? Right, nor was a signed waiver ever returned to us. Did you send one and ask for a waiver? Did you initiate the process of asking for a formal waiver? No, because... I understand you just have an email. We have the email. So you're saying that is different than the procedure set out in rule 4D, that that is just an informal waiver. Do I understand you? That's correct. This is an informal waiver. Are you saying that that's effective in this case? No, no. Okay. We're saying... Let's try to keep this up. I'm slow. You need to help me. You say there's no waiver under 4D that you're pushing for. There's a waiver under 4D, but there was never a signed waiver filed with the court. That's what we're saying. So service didn't occur until a signed waiver was filed with the court and there never was one. So you have no waiver. You have no waiver in effect under 4D. Do you agree to that? That's correct, yes. If filing with the court of a signed return waiver is part of Rule 4D, that is correct, yes. You have no waiver under 4D. Do you have delivery under 4D in any form? Do you have delivery of the summons? Was the summons served under 4D in any manner that you want to push? And if so, what was that manner? It was served under 4D. How? Specifically. By certified mailing. But the other issue with Rule 4D that we've conceded is that the company we served is Cypress, and there's no obligation under 4D for a Cypress company to respond or be served. And if you remember, 4D doesn't obligate the other party to actually answer or sign or waive. It allows the plaintiff, if that other party is a domestic corporation, to recover the fees that it has by effecting a service under another manner. I'm not understanding what you're saying. We're trying to figure out whether you have an argument here that there was service before the one-year period. Yes. And are you still arguing that there was service because of the waiver that's reflected in the e-mails? No, we're arguing that the e-mail reflects their acquiescence to a waiver. It also reflects their waiving of the defense, which they say that the service under the Hague Convention was defective. That's been their argument in the IPR, not that we didn't serve them under 4D. Can I try to make sure I understand? Are you saying you are not relying on the waiver itself for service? Instead, you're saying that the e-mail reflects that the earlier service was proper? Is that what you're saying? It waives any defenses that it was improper. The objection to the Hague Convention service is that a copy of the summons didn't have the stamp. I understand. It's a copy of the summons. We're very well aware of the fact. Which means it's not a service under 4D. This is under 4, not 4D. I don't mean 4D. Under 4. Okay. Do you agree with that? It's not a service under 4 if it didn't have the proper stamp and signature. The materials that were served upon the process server had the proper stamp and the proper signature. The copy that was delivered to the defendant may or may not have. Because as we remember, the defendant said, I never got a copy. And the court resolved that issue and said, you got a copy, it may not have had a stamp on it. But the e-mail, which was received by communication counsel after this service, said we are, that, do not believe service was properly effected on either wargaming entity. One was served under 4D, the other was served under the Hague Convention. Which says, and we waive our defenses to improper service in exchange for a date farther along for them to file their answer. So they waived the defense that there was no stamp, which makes this service become proper service. Not until it's filed with the court as a waiver. That's what a 4D says. Right, but this isn't service under 4D. Service under 4D is not the same as service under the Hague Convention. Service under 4D is where you send a letter to the defendant. 4D is concerned generally with defects in service, right? 4D? Yeah. Rule 4 is 4D. 4D is a different kind of service. The only waiver under 4 is that provided by 4D. Do you agree with that? That's correct, yes. But that waiver is not consistent with what 4D says. This is not a request for waiver. This is service under the Hague Convention. So it's not under 4D. This is service under, I believe, 4B. It's service under the Hague Convention, which is service by a process servant. Service under 4D is where I simply write a letter to the other side. Here's a copy of the complaint. Will you sign this and send it back? If they don't... But that didn't happen in this case, so it's irrelevant. Right. Go ahead. If they don't do that and they're a domestic offender... What happened in this case? We served them under the Hague Convention. They accepted service under the Hague Convention and waived the defenses to improper service. They waived the defense that service was improper because it's concealed. So the question for the board was, what is the effective date of service here? And is that before or after the year bar or time bar, right? So the problem is that for the type of waiver that Rule 4D provides for, the effective date is the date that the waiver papers are filed with the court. So one of the problems with your argument is that you're arguing, well, the waiver occurred on the date of the email. I think that's what you're arguing. And the problem with that is that no waiver papers were filed. Alternatively, you may be arguing that the effective date is the date of the original service since they waived the defenses. And the problem with that is it seems to run counter with Rule 4D with respect to other kinds of waivers. So just so you understand the quandary up here. But your argument is an answer, if I may try it. Your argument is none of that's relevant to what you're claiming. You're claiming you served under the Hague Convention. Correct. And that document is valid under the Hague Convention as a waiver of any formalities that may have been required. You have any defenses to any defects. Correct. But the waiver that you find in the email doesn't refer to the Hague Convention service, does it? It refers to either war gaming entity. One war gaming entity in Cyprus was served under Rule 4D. No, but the answer is it doesn't refer to the Cyprus service, right? It doesn't refer to the Cyprus or the England service. It says we waive any defenses. We discussed on the phone that Mr. Collins believed that this Hague— But it's not an agreement. It does not seem to me on the face of it that it's an agreement that the Cyprus service was valid. It's not the Cyprus service. We're talking about the England service. No, the England service. It's not an agreement that the England service is valid. It's a waiver. Okay. What does the Hague Convention require to make the England service valid? What do you have to do? You have to serve the same thing you would serve on a domestic corporation. You have to get it translated into the language of the country you're serving it in, and you have to get a proper process server in that country to go to the Hague Convention Authority, get a certificate that's attached to this, and then serve it and give you a service. It's the same as process service. You just have to have a translation and a certificate from the other country. That's all in here. The only defect was that when the process server printed out the summons, they didn't print out a copy of the summons that had the stamp on it, although they had a copy of the summons with the stamp on it. Did the Hague Convention service require that that be done? The Hague Convention doesn't require that, and we've satisfied the Hague Convention, which is that you have served something. My question is service in accordance with the Hague Convention, what would that be effective if this filled out summons were not submitted? Does the Hague Convention require service consistent with the home country? Is that what it does? Yes. The Hague Convention does not have a service. And consistent with the home country, it requires that you have a signed and stamped document handed over to bad people. Correct. Right? Correct. Did that happen in this case? Your answer is no, but they waived the requirement. Correct. That's your case. But not waived service. They waived the defense to that requirement, which is different than waiving service. They waived the requirement for a signature and a stamp, is what you're saying, because they got everything else. Right. If in the U.S. I had served it without a stamp, the defendant has two choices, come and challenge effective service or come and answer the complaint. The defendant's counsel quite often calls and says this or that, or it wasn't served on the right person, but we're waiving that defense and we're answering the complaint. There would be a plethora of cases that I've been involved in that had no date of service and then would have an indefinite statute of limitations for IPRs. Well, I question whether that's so, because I think that the case has to be dismissed if 90 days after the complaint is filed there hasn't been any service yet. Correct. Or alternatively, appearance in court, for example, would be the effective date of service, right? So it's not like it's going to go on indefinitely. At some point there's going to be some trigger that happens for the effective date of service. Correct. And quite often, as the federal rules increasingly, every time they change them, require more cooperation, less arguing, less fighting about technicalities and the like. And I know Mr. Collins. I've known him for a long time, involved in other cases. He's the kind of person that likes to avoid that kind of conflict, which is the right thing to do. And this email sets that date in stone in most cases. We are waiving our defense that you forgot to put a stamp. Therefore, this service becomes effective on its date, which was in December. Under what provision of Rule 4 does that comply? Well, the— What part of Rule 4 does your methodology for service fit? Where in Rule 4 are you? When—and I— It goes back to my opening question. My opening question was, does Rule 4 apply to the PTAB? You said yes. All right. So service from the PTAB's viewpoint had to be done in accordance with Rule 4. Correct. You're now telling us it was done under the Hague Convention and that that waiver is effective under the Hague Convention and you don't need to comply with 4D. Correct. That's a whole different world. That's your argument. Where under Rule 4 are you? Help me find that. Rule 4 establishes that service is effective when the party becomes officially aware of the complaint that you've given them, whether by mailing, by waiver, by service of process, by any effective means. Clearly, when Mr. Collins called me, their client was fully aware of the complaint, of everything about that, and he followed it up with an email that said, we're waiving any defenses to improper service, which if not on the date of service, certainly on the date of this letter, which says I am under no obligation to re-serve you, if he had said we're keeping our defenses, then I would now be on notice that he's not thinking they've been served and I would have to serve him again under the Hague Convention. When, if ever, did you explain this to the PTAB? The PTAB? Yeah, the PTAB. That's what we're dealing with. In their decision, clearly doesn't understand what service is. They said... Well, that's not the question. The question is, did you explain it to them? Yes, we explained it to them. If they need help, the question is, did you explain it to them? I explained it to them. Actually, we didn't do the IPR. It was done by Chagut, I believe. And I filed a declaration in that, and I explained this to them in the declaration. Where? Can you show us where? Is that in the record somewhere? On the side of my declaration, it's referenced at the end of the decision. I didn't think it was in Angie's brief, but maybe it's in the record. Do you have an appendix page? It's probably best if you can give us an appendix page. I'm going to give you it. It was Exhibit 2027. That doesn't help. I know, it's paper number 30. I don't have an appendix reference for that particular declaration. It was a declaration that included appendix pages 1720 through 1757, which is the actual... Where did you make this argument in your brief here? Let's make it simple. It's in the very beginning of the brief here. It's on page 4 of the brief. Page 4 of the brief? Yes. Wargaming specifically unequivocally waived the right to argue lack of service on February 11, 2016. Yes, but that's not directed to the waiver argument that you're making now with respect to the Great Britain Service. You were arguing that this was sufficient under Rule 4D. Where do you say they waived the defect in the Great Britain Service? It's at the top of the page where I quote, end our defenses to improper service. That's it? That's the summons that's the only place you argue? It's starting on page 3, going to page 4. My question is specific. Where did you argue that they waived defects in the Great Britain Service? There we go. On page 5, we quote where the PTAB concluded where Petitioner argued they had never been served. No, that's not right. And then the PTAB concluded that they Where did you argue that they had, by the e-mails, waived the Great Britain Service defects? I cite where the PTAB says that it was not effective. And then the first full paragraph on page 6, assertion that war gaming has never been served is an absurdity. So we say that the court said that the service, the process service under the Hague Convention was defective and therefore there was no service. We said that ignored the fact that they waived their defense. But in the very next paragraph, you say the assertion that war gaming has never been served is a legal absurdity. War gaming extensively participated in the district court proceedings, including attending a hearing and filing and pleadings. To claim that war gaming had never been served is to elevate misperceived form well over real substance. War gaming's counsel agreed to waive service and waive all service defenses. A party cannot simply walk away from a litigation discredited its own counsel's written agreement. Nothing in that ever pointed, I'm slow and so you have to help me. Nothing in that ever pointed in the direction you're now leading us. So I can understand why the PTAB might have not been able to figure out what to do because I've been working on the assumption that all of this took place either consistent with or failed to be consistent with civil procedure rule 4. But you're now telling me rule 4 has nothing to do with it. It was all done under the Hague Convention and that under the Hague Convention that waiver is valid. Well, where do you lay all that out? What's your source for that? It's under rule 4 but not rule 4D. And we lay it out again at the end of page 7 where the PTAB talks about it. What about in your argument later in the brief? You seem to have a standards review section, an actual argument section that starts on page 20. Correct. Where is it like around page 20 and onward? Let me just finish pointing out at the bottom of page 7 beginning of page 8 where we say in this instance the form, i.e. missing seal, does not matter because waiver of the defense of missing seals is explicitly weighed at 1631. So we do make that argument. And then again. Where do you make the argument in the brief? That's what we're talking about. Again? The brief. Where do you make the argument? That's in the brief. That's end of page 7, beginning of page 8 in the brief where we make that statement. All right. Well, unless there are other questions, I think we're out of time. We'll give you two minutes for rebuttal. Mr. Batts? You're going to straighten this out, aren't you, Mr. Batts? I hope so, Your Honor. May it please the Court, Harper Batts on behalf of the appellees. I think there's two determinations by the PTAB below. The first determination that the PTAB made was that the challenge claims were unpatentable. And the second determination that was the full discussion here today was that the PTAB determined that the petition was not time-barred. Now, both of those decisions are supported by substantial evidence, and I'd like to turn to the time-bar one since that's been the focus here. There have been shifting positions by the appellant as to what would constitute the time-bar for 315B. And if we go back to the language of 315B, it's clear that it's supposed to be service. I reserve the right to come back to your substantial evidence which you threw in there as you went past it. Noted, Your Honor. Noted that. Okay, go ahead. So there's two arguments that the appellant raised before the PTAB as to service. There was the events in Cyprus and the events in the U.K., and I'll turn to each in turn. So with Cyprus, they contended that they had served in a foreign country by mail, and the relevant provision for Rule 4 there is Rule 4F2C2. And the relevant provision requires that when trying to serve in a foreign country by mail, you're required to have the clerk of court mail the materials and to return a signed receipt. And the undisputed facts in the record below are that Mr. Zito, appellant's counsel, mailed the materials and there was no evidence of a signed receipt. So therefore, there was no service in Cyprus, and the facts there are all in favor of no service in Cyprus. There's no dispute of facts that the PTAB had to consider. So then turning to the U.K. and the events in the U.K., the appellant contended that it had served in the U.K. under the Hague Convention, and the Hague Convention requires that a signed and sealed summons be included in the materials. And I do think it would be useful maybe to go back through the history of what happened in the proceedings because the original documents pre-institution that they relied upon was Appendix 1720 through 1757, and at the end of that document, they was attached two pages, 1754 and 1756, which included signed and sealed summons. But we deposed the process server, Mr. Tabat, in the U.K., and he confirmed that there is no way that this set of documents was the documents that he served. Okay, but it just seems to be conceded that they weren't properly served. Their argument boils down, as I understand it entirely, to an argument about waiver of that defense. I agree, Your Honor, that seems to be where we're at, and in terms of the waiver argument, I think the first point that I would note is that there is no briefing on waiver before the PTAG. They never raised the issue of waiver in any form, whether we're talking about Rule... I saw that there was a discussion of waiver in the oral argument transcript. Correct, but in the briefing, there was absolutely no discussion of waiver in any form, including waiver under Rule 4D. At the hearing, for the first time, they raised the issue of whether we had waived service. They did not raise the issue of whether the Covington... the e-mail 1631 constituted... there were statements in that e-mail that meant we were waiving our rights to contest whether service had been effectuated. So they were, at best, at the hearing, it wasn't a really clear argument at the hearing, but it was an argument about whether waiver under 4D had been performed. Was it waiver under 4D or some other kind of waiver? His argument, if I understand it, and I can't swear I do, his argument is the waiver involved in this particular fact situation is not a waiver under 4D. It's a waiver under the general principles of the Hague Convention. You don't have to comply with 4D, according to his argument. You can have a waiver in an e-mail like that, which you can't do under 4D, as we all know, supposedly. So I think going back to the statute that we're talking about here, we're talking about 315B, which requires service. Now there's an open question, I think, here, whether even a 4D submission of a waiver of service could constitute service under 315B, but we don't need to address that here today because they did not provide the written materials, the form for waiver of service, and they never filed anything before. So we don't need to talk about that. In the oral argument transcript, I see no express reference to Rule 4 or Rule 4D, so can you tell me what you're relying on to say this discussion is limited to Rule 4D? That's the best that I see from that discussion in the transcript, Your Honor, is they were saying we waived service. And so you're surmising that they meant waiver under Rule 4D? That was all we had to rely on. But you're not suggesting that that rule was actually expressly invoked or referred to? No, Your Honor. And we're left kind of guessing what their arguments were because they waived these arguments by not raising any of the arguments in their briefings, so we have nothing. And the blue brief is written consistent with what Judge Stoler just said, which is there's nothing in the blue brief, although I haven't gone back thoroughly since we've been talking, that limits his waiver argument to Rule 4. So he's been talking about waiver. He just didn't tell us what the waiver was, what its legal basis was. He told us what it was. It was that email. But that could... You're assuming it had something to do with Rule 4. I must confess I was under that same mistaken impression, but apparently that's not what he meant. So it appears there is two separate arguments from best what I can tell, an argument about Rule 4D and whether that was complied with, and now this separate argument about whether the statements in the email, with some theory, could constitute an inability to argue that that service had been effectuated. And I think that goes back to... In Great Britain. In Great Britain. He seems to have given up on the argument that there was a waiver of service that complied with 4D. Yes. He's now coming up with what seems to be a new argument, which is difficult to find in the briefing or argument before the PCAB and is difficult to find in the briefs here. I understand also below there was argument about whether service was properly effected either in England or in Cyprus, but I don't see that necessarily being raised separately from the waiver argument on appeal. Do you agree with that? I'm not sure I understand the question. I apologize, Your Honor. I'll ask. Thank you. I guess the point that I would like to make is that we're struggling here with what is the basis for this new argument about the email and the statements in the email, because if it's not Rule 4 and the Hague Convention doesn't have any provision about waiver, and there's no case law support that appellant has provided for this argument, then what is the basis for the argument to say that any statements in an email can constitute an inability to argue that the statute 315B, not anything that happened in the district court, but to argue whether service has occurred and the service that's required to bar a petitioner from being able to file an IPR. Yeah, the problem with that is I don't know if you wrote the email. Whoever wrote that email was under the view that he or she was waiving any defect in the service and said so. Now, if that person was representing a party, then that party may be stuck with that person's waiver if that waiver is a legal act. And the question is, we've all been assuming the problem with the waiver argument was 4D, but now he's got a whole other theory. People waive stuff all the time, and that email would sound like a waiver if it can be done. But can it be done under the Hague Convention? Do you happen to have any information on that question? Unfortunately, I don't have the provision, but I'm aware of no provision in the Hague Convention that permits a waiver of the type we're talking about. Are you aware of any that precludes it? No, Your Honor. Yeah, that's where we are, isn't it? Yes. But I do think that goes back to a question of whether in a district court, whether you're required to now show up for a hearing and whether you're subjecting yourself to the jurisdiction of the court requires in a waiver situation for you to file an affirmative waiver. Similarly here, we appeared voluntarily before the court and then filed our IPR petition within the one-year bound of that voluntary appearance. But there is no waiver in the lower... That does not equate to a prevention of an IPR petition from being filed under 315B when the clear facts here are that there was no service. The undisputed facts are that... Mr. Azzitto added some views of his own that are not in the fact record as to what happened with the process service. Now, you all participated in the district court. I'm not part of the district court proceedings, Your Honor. You mean me personally? I don't mean you personally. I'm talking about your client. Yes, Your Honor. Participated in the district court. Yes. And the question of service was never raised in the district court. The district court assumed that all the parties were there properly. Is that correct? We voluntarily appeared in the district court, Your Honor, for the hearing, and we made sure to file our IPR less than a year after that voluntary appearance. By appearing in the district court, that was subjected you to the jurisdiction of the district court, right? Correct. So what... I don't have the text of 4D in front of me, unfortunately. What does 4D say? Do you have the text? So 4D... Well, I know it's... I don't have it memorized exactly, but it's provisions require that the counsel that's requesting the waiver send in writing and notify in writing the other side and send them a form for waiver and then to obtain... Was there a form for waiver sent with the material that was served in Great Britain? No, Your Honor. There's no evidence in the record of any form of waiver being submitted to Oregon at any time. I happen to have a copy of Rule 4D in front of me, and it says, Waiving Service. That's the heading, Waiving Service. One, requesting a waiver, and then it goes through how you go about requesting a waiver, and then it says Failure to Waive and Results of Filing a Waiver, and the whole thing is designed for the plaintiff to ask the defendant, Wouldn't you rather waive service than have us go through the expense which is going to cost all of us money? That's apparently the only waiver provision in Rule 4 that I could find. I believe that's correct, Your Honor. I'd like to ask you a hypothetical. Let's assume for a minute that that procedure was properly followed. Okay. There's a statement in the PTAB's opinion that is a bit concerning. They say, We have no authority to overlook defects in service of a complaint in district court litigation and deem service to have occurred. In a situation where sources of law, including Rule 4, would suggest that service had occurred even though there were defects in service, for example, where someone actually complied with Rule 4B, would you agree that the PTAB does have authority to overlook defects in service or at least determine whether service occurred in district court in order to implement the language in Section 315? I'm not aware that it has that authority, Your Honor. You think it can't interpret what service means under Section 315? I think that it can interpret what service means. Well, doesn't it have to then look to what the law is on when service was affected in order to be able to interpret that statutory language? I mean, that statute, when Congress passed that statute, 315B, there was a set of laws that already existed as to what service is. And so can the PTAB go to those set of laws to determine whether service has occurred? But here, there wasn't a question. Well, the answer is yes. Of course they have to, right? I said it's a hypothetical. Yes. I said it's a hypothetical. I'm just trying to see what the PTAB has authority to do. Yes. So I believe, yes, Your Honor. And what we did here was for the facts here, we provided the case law from district courts and from appeals courts that dealt with the issues of defects in service, including assigned and sealed summons, to show those are the types of defects that aren't corrected. But I think what the PTAB was saying is if they didn't comply with the federal requirements for service, we can't excuse that. I think that's one interpretation, yes, Your Honor. Is that your interpretation? It's not clear to me, Your Honor, because the point that you're raising here, whether that's what they intended or not, but I don't think that they were addressing the issues that had been raised before them on the Cypress events, the Hague events. They did look to Rule 4. They did try to determine whether service was affected under Rule 4, right? They made those determinations. Definitely. Yes, Your Honor. But at the institution stage, they basically said, we can't deal with this. And I see now why they can't. So we're going to assume we're just going to pass it over. We're not going to deal with it. We're going to leave it for the merits panel to decide at a later time. Isn't that bait? Now, the only question I think Judge Stoll raises is can they do that? My question is actually slightly different. I just want to make sure. I'm not concerned about whether they did it at institution stage or later at final stage because they were waiting for further discovery information. Rather, I was just concerned that that sentence read as if they don't think that they have authority to look at what service means under Rule 4. I guess to address your concern, Your Honor. Go ahead. I believe that the Woodford decision that we cited on page 48 of our briefing, the Supreme Court decision, made clear that if you have a complaint about the procedures of an administrative agency, that you have to make a timely objection. There was never any objection by appellant as to the institution decision. They never moved to reconsider. We had the supplemental briefing after the PTAB looked and said there's competing evidence, but we're not seeing service, so we're moving forward. Not one time in all the three sets of briefing that we had or in any of the options that they had for briefing did they raise an impropriety of the institution decision. Okay. All right. Thank you very much. Thank you, Your Honor. Mr. Zita will be here in a few minutes. That's not correct, Your Honor. We did raise it throughout the briefing. And also, because the PTAB didn't make a decision on service or not service, it wasn't a final decision that we could then appeal. They said we're holding that over until trial. So there was no decision to appeal early on, to ask for interlocutory appeal. All right. Before I run out of time, on page 3, where I start the statement of case, I talk about war gaming was properly served on December 10, 2015. December 10, 2015 is the Hague Convention, not the Waiver of Service in Cyprus. So we're talking about the Hague Convention. At the bottom, we say, let's move on to say, we will waive service and our defenses to improper service. End of that very first section, page 3 and 4, war gaming specifically unequivocally waived the right to argue lack of service on February 11, 2016. And I'm at all times referring to appendix document 1972, which is the Hague Convention, not the 4D in Cyprus, the Hague Convention in England. What is the document number and where is that in the appendix? Appendix 1972. 1972. That's the Hague Convention. That's what's referenced at the very beginning on page 3, and that's the one we're talking about. The Hague Convention is just like regular service by a process server. You don't have a follow-up, as in 4D, where you file the waiver with the court. What you have is a document that shows you serve somebody, and they have a date they have to answer. They either call you up and ask for an extension, or they answer by that date. If they don't answer by that date, then you go to the court and say, here's my process server, they're in default. In this case, they waived. If I had done that, they had already waived. We have no defense to not being properly served. We are in default. Give us some time to correct that. That's the situation. If I have a process server document, an opposing counsel calls me up and says, I think there's a defect, but I'm waiving the defenses to service. There's nothing else I'm supposed to do as a plaintiff. There's no 4D letter that you file with anybody. He's been served. He's agreed that he's been served. He's waived his defenses. If he goes into default, which is why he asked me for an extra 60 days, he didn't want to go into default. We had a hearing already set up in Texas. The preliminary hearing was already set up. Okay, Mr. Zito, we're out of time. I know I'm out of time. No, no, no. You're out of time. Thank you. Thank you. Okay. All right. The audit report is adjourned until tomorrow morning at 10 o'clock a.m.